UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VICTORIA LOUISE GATTI,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 3:17-CV-05745-RSL-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: April 6, 2018 |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff filed this matter seeking judicial review of Defendant's denial of her application for supplemental security income ("SSI").

After considering the record, the undersigned concludes the Administrative Law Judge ("ALJ") committed harmful error in his treatment of medical opinion evidence. Had the ALJ not erred, the ALJ's Step Two findings may have changed, and the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and the undersigned recommends this matter be reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Report and Recommendation.

## FACTUAL AND PROCEDURAL HISTORY

On July 9, 2013, Plaintiff filed an application for SSI, alleging disability as of April 20, 2002. *See* Dkt. 6, Administrative Record ("AR") 20. The application was denied upon initial administrative review and on reconsideration. *See* AR 20. On July 21, 2015, ALJ Rudolph Murgo held the first hearing in this matter, at which Plaintiff and vocational expert ("VE") Paul Morrison testified. *See* AR 45-77. On April 27, 2016, ALJ Murgo held a second hearing, at which medical expert Dr. Robert McDevitt, M.D., and VE Tom Weiford testified. *See* AR 80-99; *see also* AR 884-85. In a decision dated June 7, 2016, the ALJ determined Plaintiff to be not disabled. AR 20-37. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-3; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to find her mental health impairments severe at Step Two of the sequential evaluation process; (2) improperly discounting medical opinion evidence from examining physician Dr. Kathleen S. Mayers, Ph.D., and treating physician Dr. Gary Gaffield, D.O.; (3) failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony; and (4) making Step Four findings unsupported by substantial evidence. Dkt. 8, pp. 4-15.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.      Whether the ALJ properly considered Plaintiff's mental health impairments at Step Two.**

Plaintiff first argues the ALJ erred by failing to find her mental health impairments severe at Step Two of the sequential evaluation process. Dkt. 8, pp. 4-7.

Step Two of the Administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Regarding mental impairments, the ALJ considers four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the degree of a claimant's limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id*. at (d)(1). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

1    At Step Two, the ALJ found Plaintiff has "the following severe impairments: migraines

2 and degenerative disc disease." AR 22. The ALJ further found that although Plaintiff had been

3 diagnosed with post-traumatic stress disorder ("PTSD"), affective disorder, borderline

4 intellectual functioning, and a history of substance abuse, these impairments are non-severe. AR

5 22. Specifically, the ALJ discussed evidence regarding Plaintiff's mental health conditions and

6 found Plaintiff has no limitations in the functional area of activities of daily living, mild

7 limitations in the functional areas of social functioning and concentration, persistence, or pace,

8 and no episodes of decompensation. AR 24-25. The ALJ determined, "[b]ecause the claimant's

9 medically determinable mental impairments cause no more than 'mild' limitation in any of the

10 first three functional areas and 'no' episodes of decompensation which have been of extended

11 duration in the fourth area, they are nonsevere." AR 25 (citation omitted).

12   First, the ALJ found Plaintiff has no limitations in activities of daily living because

13 Plaintiff manages her personal care needs independently and improved self-care through

14 counseling. AR 24. The ALJ cited Plaintiff's ability to prepare frozen meals, do her own laundry,

15 help with cleaning, use tribal transportation, grocery shop, watch television, read, and do various

16 household chores. AR 24. The evidence, however, does not support the ALJ's finding. Plaintiff

17 reported that although she uses tribal transportation, she only goes out if she has to, and cannot

18 go out alone due to anxiety. AR 274, 276. As such, Plaintiff typically has a friend go with her to

19 run errands or grocery shop. *See* AR 58, 65, 274, 276. Similarly, Plaintiff testified she usually

20 gets panic attacks when she goes out of the house. AR 69-70.

21   Moreover, while Plaintiff reported helping with household chores, she said her roommate

22 does most of the household cleaning, and Plaintiff sometimes needs to be reminded to help. *See*

23

24

1  AR 58, 275. Likewise, Plaintiff testified she has difficulty remembering appointments and gets
2  help from the people she lives with to "keep things organized." AR 65.

3    In all, the evidence shows Plaintiff's activities of daily living are more limited than
4  described by the ALJ. Thus, the Court finds the ALJ's conclusion that Plaintiff has no limitations
5  in activities of daily living is not supported by substantial evidence. *See Reddick v. Chater*, 157
6  F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without
7  considering their context).

8    Second, the ALJ determined Plaintiff has mild limitations in social functioning. Social
9  functioning refers to a claimant's capacity to interact independently, appropriately, effectively,
10 and on a sustained basis with other individuals. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016).
11 Here, the ALJ explained that although Plaintiff reported she has difficulty getting along with
12 others, she nevertheless gets along with authority figures, was never fired due to problems
13 getting along with others, and was described by consultative examiners as pleasant, friendly,
14 polite, and cooperative. AR 24. Again, however, the ALJ's conclusion is not supported by
15 substantial evidence in the record. The ALJ's decision does not reflect, for example, that Plaintiff
16 is easily irritated and isolates herself. AR 274, 279. Plaintiff further reported difficulties being in
17 a room with many people and meeting new people. AR 279; *see also* AR 69-70 (panic attacks in
18 public when around a lot of people).

19    Other evidence in the record supports that Plaintiff has more than mild limitations in
20 social functioning. For instance, one of Plaintiff's treating physicians, Dr. Sophie M. Heptowit,
21 M.D., opined Plaintiff has marked social limitations due to the anxiety she gets when talking
22 with others. AR 599. Plaintiff's treating Advanced Registered Nurse Practitioner, Tina M.
23 Taylor, opined Plaintiff has marked limitations in her ability to work in coordination with or
24

REPORT AND RECOMMENDATION - 5

proximity to others without being distracted, interact appropriately with the public, and accept instructions and respond appropriately to criticism from supervisors. AR 525. Dr. Renee Eisenhauer, Ph.D., reviewed medical evidence and determined Plaintiff has moderate limitations in her ability to work in coordination with or proximity to others without being distracted by them. AR 127. Dr. Eisenhauer also concluded Plaintiff is moderately limited in her ability to interact appropriately with the general public and get along with co-workers. AR 128. Similarly, Dr. Aaron Burdge, Ph.D., reviewed medical evidence and opined Plaintiff has marked limitations in her ability to communicate and perform effectively in the workplace. AR 528-29.

The ALJ did not discuss the evidence showing Plaintiff's limitations in social functioning at Step Two. *See* AR 23-24. Therefore, the ALJ's finding that Plaintiff has only mild limitations in social functioning is not supported by substantial evidence. *See Hutchinson v. Colvin*, 2016 WL 6871887, at *4 (W.D. Wash. Nov. 22, 2016) (noting the ALJ's treatment of the evidence of record at Step Two suggested improper "cherry-picking" to support the ALJ's decision "while failing to address aspects of the record supporting a finding of severe limitations"); *see also Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject significant probative evidence without explanation").

Third, the ALJ found Plaintiff has mild limitation in the functional area of concentration, persistence, or pace. AR 25. The ALJ explained that while Plaintiff reported difficulties with memory, task completion, concentration, and instructions, she took college courses and received A and B grades. AR 25. Moreover, the ALJ noted that during a consultative examination, the examiner found Plaintiff's concentration and task persistence fair, with average pace. AR 25. Nevertheless, the ALJ failed to discuss evidence at Step Two showing Plaintiff's mental impairments cause limitations in this functional area. For example, the record reflects multiple

physicians found Plaintiff has limitations in her memory and ability to complete detailed or complex tasks. *See, e.g.*, AR 127, 487, 529, 530, 541, 551. Several physicians likewise found Plaintiff has difficulty with concentration. *See, e.g.*, AR 127, 487, 524, 525, 600, 607, 762-63.

Thus, there is evidence Plaintiff's mental health conditions cause more than mild limitations in her concentration, persistence, and pace. The ALJ, however, did not discuss this evidence when finding Plaintiff has mild limitations in this area. *See* AR 25. As the ALJ did not discuss evidence related to Plaintiff's mental health conditions, the undersigned cannot conclude the ALJ properly considered all the evidence when finding Plaintiff has mild limitations in concentration, persistence, or pace. *See Flores*, 49 F.3d at 570-71. As such, the ALJ's third finding is unsupported by substantial evidence.

Fourth, the ALJ found Plaintiff has experienced no episodes of decompensation. AR 25. Plaintiff has not shown, nor does the undersigned find, she suffered from episodes of decompensation. *See* Dkt. 8. Hence, the ALJ's fourth finding is supported by substantial evidence.

For the above stated reasons, the ALJ failed to consider the entire record when finding Plaintiff did not have a severe mental impairment at Step Two. Accordingly, the ALJ erred.

**II.     Whether the ALJ properly considered medical opinion evidence from Dr. Mayers.**

Next, Plaintiff argues the ALJ erred in his treatment of medical opinion evidence from examining physician Dr. Mayers. Dkt. 8, pp. 7-11.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the

1  opinion can be rejected "for specific and legitimate reasons that are supported by substantial
2  evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035,
3  1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can
4  accomplish this by "setting out a detailed and thorough summary of the facts and conflicting
5  clinical evidence, stating [his] interpretation thereof, and making findings." *Reddick*, 157 F.3d at
6  725 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

7  　　　In this case, Dr. Mayers conducted a psychological evaluation of Plaintiff in August
8  2015. *See* AR 601-611. As part of her evaluation, Dr. Mayers reviewed medical records,
9  conducted a mental status examination, and conducted a Wechsler Adult Intelligence Scale-IV
10 ("WAIS-IV") assessment. *See* AR 601-07. Dr. Mayers diagnosed Plaintiff with major depressive
11 disorder; PTSD; alcohol use disorder, with no alcohol use reported for 13 years; opioid use
12 disorder, with no use reported for six years; stimulate use disorder, with no use reported for five-
13 to-six years; and borderline intellectual function vs. mild neurocognitive disorder due to multiple
14 etiologies. *See* AR 607.

15 　　　In relevant part, Dr. Mayers opined Plaintiff could understand, remember, and carry out
16 three-stage instructions as well as detailed tasks. AR 607. Additionally, although Dr. Mayers
17 found Plaintiff had "good" concentration for three-stage directions, Dr. Mayers opined Plaintiff
18 would "have some difficulties maintaining attention and concentration through a normal eight-
19 hour workday" and recommended "frequent breaks." AR 607. Regarding Plaintiff's "ability to
20 make judgments on complex work-related decisions," Dr. Mayers found Plaintiff had moderate
21 limitations. AR 609. Furthermore, while Dr. Mayers found Plaintiff could socialize and interact
22 with others in the workplace, she also opined Plaintiff would be mildly limited in her ability to
23 interact appropriately with the public, supervisors, and co-workers. AR 607, 610. Likewise, Dr.
24

Mayers found Plaintiff had mild limitations in her ability to respond appropriately to usual work situations and changes in a routine work setting. AR 610.

In the WAIS-IV, Dr. Mayers determined Plaintiff was in the 10th percentile for verbal comprehension, 21st percentile for perceptual reasoning, 4th percentile for working memory, 5th percentile for processing speed, and 6th percentile for a full scale IQ, with an IQ of 77. AR 606.

The ALJ summarized parts of Dr. Mayers' opinion and then gave it "little weight," stating:

> (1) Her opinion does not square with the claimant's ability to complete most of her activities of daily living independently, to volunteer and to be working 32 hours a week. It also does not comport with the educational evidence record, including the claimant attending high school with a regular curriculum and attending college and making good grades. (2) It further does not square with the medical evidence record including the claimant's recent IQ testing and recent treatment records showing that psychiatric medication was helpful and the claimant's symptoms were improving. (3) Finally, her opinion does not square with that of the medical expert at hearing, who reviewed the most complete and up to date medical record and has the greatest degree of education and training.

AR 30 (numbering added).

All three of the ALJ's reasons for discounting Dr. Mayers' opinion were error because they were vague and conclusory. First, the ALJ gave Dr. Mayers' opinion little weight because her opinion did not "square with" Plaintiff's ability to conduct various activities, including her ability to complete her daily activities independently, volunteer, and work,[1] as well as her educational background. AR 30. An ALJ may discount a doctor's findings if those findings appear inconsistent with a plaintiff's activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, an ALJ cannot discount a physician's opinion in a conclusory manner;

---

[1] Although Plaintiff worked after the application date, the ALJ found "this work activity did not rise to the level of substantial gainful activity." AR 22.

1  rather, the ALJ must state his interpretations and explain why they, rather than the physician's
2  interpretations, are correct. *See Embrey*, 849 F.2d at 421-22.

3      In this case, the ALJ's statement that Dr. Mayers' opinion was inconsistent with
4  Plaintiff's activities, volunteering, work, and educational background was conclusory because
5  the ALJ failed to explain which aspects of Dr. Mayers' findings were contradicted by these
6  activities. *See* AR 30. In other words, the ALJ simply concluded the cited activities contradicted
7  Dr. Mayers' opinion, but provided no explanation in support. *See* AR 30. Hence, the ALJ's
8  conclusory statement was not a specific, legitimate reason, supported by substantial evidence, to
9  discount Dr. Mayers' opinion.[2] *See Embrey*, 849 F.2d at 422.

10     In addition to being conclusory, the ALJ's first reason for discounting Dr. Mayers'
11 opinion was also error because it was not supported by substantial evidence in the record.
12 Contrary to the ALJ's assertion, the record reflects Plaintiff does not complete her daily activities
13 independently. In a Function Report – Adult and at the hearing, Plaintiff reported she has "a hard
14 time going outside of the house alone" due to anxiety and needs a friend to go grocery shopping
15 or run errands with her. AR 65-66, 274, 276, 277. Plaintiff also reported that one of the people
16 she lives with helps care for her cat. AR 274. Furthermore, Plaintiff reported she needs reminders
17 for her medications and appointments. AR 65, 275, 277. Thus, the ALJ's assertion that Plaintiff
18 completes most of her daily activities independently is unsupported by substantial evidence in
19 the record.

---

[2] Plaintiff and Defendant dispute whether "clear and convincing" or "specific and legitimate" is the appropriate standard to apply to the ALJ's treatment of Dr. Mayers' opinion. *See* Dkt. 8, p. 8; Dkt. 9, p. 5. Regardless, the undersigned finds the ALJ erred even when applying the lower standard of "specific and legitimate." Thus, it is immaterial whether the ALJ met the higher standard of "clear and convincing," and the undersigned analyzes this case under the less stringent standard of "specific and legitimate."

1        With respect to the ALJ's reference about Plaintiff working "32 hours a week," Dr.
Mayers' report reflects she was aware that Plaintiff was looking for work at the time of her
evaluation. *See* AR 602. Notably, Dr. Mayers did not opine Plaintiff was unable to work; in fact,
Dr. Mayers noted Plaintiff "has been able to work." *See* AR 610. Nevertheless, Dr. Mayers did
opine Plaintiff would have limitations in basic work activities, such as limitations in interacting
with the public, supervisors, and co-workers, and difficulties with maintaining attention and
concentration through an eight-hour workday. *See, e.g.*, AR 607, 610. Therefore, Plaintiff's
ability to volunteer and work below levels of substantial gainful activity is not necessarily
inconsistent with Dr. Mayers' evaluation.

        The ALJ's assertion that Dr. Mayers' findings are inconsistent "with the educational
evidence record" is similarly unsupported by substantial evidence. The ALJ claimed Dr. Mayers'
findings conflicted with Plaintiff's ability to attend high school "with a regular curriculum,"
attend college, and receive good grades. AR 30. However, the record reflects Plaintiff graduated
high school in 1980 and attended college in the 1980s – prior to the 2002 sexual assault which
led to her mental health symptoms and subsequent disability claim. *See* AR 50, 602-03. In
addition, Plaintiff more recently attended college courses online. *See, e.g.*, AR 737, 808, 840.
Although Plaintiff reported at a mental health appointment in February 2014 that she was getting
good grades, she reported in June and September 2014 that she failed classes. *See* AR 795, 814,
830-31. Hence, the ALJ's assertion that Plaintiff's educational background is inconsistent with
Dr. Mayers' opinion is not supported by substantial evidence.

        In sum, the ALJ's first reason for discounting Dr. Mayers' opinion was error because it
was conclusory and unsupported by substantial evidence in the record.

        Second, the ALJ gave Dr. Mayers' opinion little weight because he found it inconsistent with
recent IQ testing and treatment records showing improvement. AR 30. The ALJ yet again provided a

REPORT AND RECOMMENDATION - 11

conclusory statement, as he failed to explain how recent IQ testing and treatment records undermined particular findings by Dr. Mayers. Additionally, the ALJ provided no record citations to support that recent testing and treatment records undermined Dr. Mayers' opinion. As such, this was not a specific, legitimate reason, supported by substantial evidence, to discount Dr. Mayers' opinion. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was error, as the ALJ failed to explain why the physician's opinion was flawed); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (the ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

Third, the ALJ discounted Dr. Mayers' opinion because he found it inconsistent with the testimony from Dr. McDevitt, the medical expert. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester,* 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). Hence, a non-examining physician's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician. *Lester,* 81 F.3d at 831 (citations omitted); *see also Buck v. Berryhill*, 869 F.3d 1040, 1049-50 (9th Cir. 2017). However, a non-examining physician's opinion "may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes,* 881 F.2d at 752).

In this case, the ALJ discounted Dr. Mayers' opinion because it did "not square with" the opinion from the Dr. McDevitt, a non-examining medical expert's testimony. As stated above, when a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record."

*Lester*, 81 F.3d at 830-31. The fact Dr. Mayers' opinion appeared inconsistent with the non-examining medical expert's testimony shifts the standard of review for giving less weight to Dr. Mayers' opinion to "specific and legitimate," but does not eliminate the need for the ALJ to provide a proper reason to reject this opinion. Further, the ALJ failed to explain why the fact that the medical expert reviewed records and had more training entitles him to greater weight than Dr. Mayers, who also reviewed records and additionally examined Plaintiff. As such, the ALJ's third reason for giving Dr. Mayers' opinion little weight was error because it was conclusory and not a specific, legitimate reason for doing so. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts he claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects").

Hence, the ALJ failed to provide any specific, legitimate reason, supported by substantial evidence, to give Dr. Mayers' opinion little weight. The ALJ therefore erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

In this case, had the ALJ properly considered all of Dr. Mayers' opined limitations, the ALJ may have included additional limitations in the RFC and hypothetical questions posed to the VEs. For example, the RFC and hypothetical questions may have accounted for Plaintiff's

difficulty maintaining attention and concentration by including the frequent breaks Dr. Mayers recommended. *See* AR 607. The RFC and hypothetical questions may have also contained restrictions accounting for Plaintiff's moderate limitation in her ability to make complex work-related decisions. *See* AR 609. The RFC and hypothetical questions at the second hearing – from which the ALJ determined Plaintiff could perform past relevant work – did not contain such limitations. *See* AR 25-26, 36, 95-99. Accordingly, the ALJ's failure to properly consider Dr. Mayers' opinion was not harmless and requires reversal.

Furthermore, because Dr. Mayers opined to mental health diagnoses and limitations, the ALJ's proper consideration of Dr. Mayers' opinion may reconcile the ALJ's Step Two error. Thus, as reconsideration of Dr. Mayers' opinion may impact the Step Two analysis – and may address any potentially harmful error at Step Two – the undersigned recommends the ALJ be instructed to re-evaluate the entire sequential evaluation process on remand, including his Step Two findings regarding Plaintiff's mental impairments.

### III. Whether the ALJ properly considered Dr. Gaffield's medical opinion, Plaintiff's subjective symptom testimony, and the Step Four findings.

Plaintiff asserts the ALJ erred by giving legally insufficient reasons for discounting Dr. Gaffield's medical opinion and Plaintiff's subjective symptom testimony. Dkt. 8, pp. 11-14. Moreover, Plaintiff argues the ALJ's Step Four findings were unsupported by substantial evidence. *Id.* at 14-15.

The undersigned has determined the ALJ committed harmful error regarding Dr. Mayers' opinion. *See* Section II, *supra*. Because this error may impact multiple steps of the sequential evaluation process, the undersigned recommends the ALJ be instructed to re-evaluate the entire sequential evaluation process on remand, including Step Two, all medical opinions, Plaintiff's subjective symptom testimony, and the Step Four findings.

CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 6, 2018, as noted in the caption.

Dated this 19th day of March, 2018.

David W. Christel
United States Magistrate Judge